IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

RICHARD JASON COX,

      Petitioner,

vs.                              Case No.:  5:10cv90/RH/EMT

KENNETH S. TUCKER,[1]

      Respondent.

_____/

## ORDER and REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (doc. 5).  Respondent filed an answer and relevant portions of the state court record (docs. 13, 14, 15).  Petitioner filed a reply (doc. 18).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* docs. 14, 15).[2]  Petitioner was charged in the Circuit Court in and for Bay County, Florida, Case No. 2006-CF-1920, with one count of possession of a representation of sexual

---

[1] Kenneth S. Tucker succeeded Edwin G. Buss as Secretary for the Department of Corrections.  Secretary Tucker is automatically substituted as Respondent.  *See* Fed. R. Civ. P. 25(d)(1).

[2] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (docs. 14, 15).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

performance of a child (Ex. A at 5).  Following a jury trial on November 15, 2006, Petitioner was found guilty as charged (Ex. B at 250; Ex. I). On November 30, 2006, Petitioner was adjudicated guilty and sentenced to sixty (60) months of imprisonment with pre-sentence credit of 179 days (Ex. B at 308–12; Ex. H).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D06-6340 (Ex. J).  The First DCA affirmed the judgment per curiam without written opinion on July 1, 2008, with the mandate issuing July 17, 2008 (Ex. M). Cox v. State, 980 So. 2d 1252 (Fla. 1st DCA 2008) (Table).  Petitioner did not seek further review.

On September 30, 2008, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. N at 1–6).  The state circuit court appointed counsel for Petitioner and held a limited evidentiary hearing on three of Petitioner's claims (id. at 38, 51, Ex. O).  The state circuit court denied the Rule 3.850 motion on July 6, 2009 (Ex. N at 64). Petitioner appealed the decision to the First DCA, Case No. 1D09-3568 (Ex. P).  The First DCA affirmed the decision per curiam without written opinion on April 9, 2010, with the mandate issuing May 5, 2010 (Exs. R, S).  Cox v. State, 32 So. 3d 624 (Fla. 1st DCA 2010) (Table).

Petitioner filed the instant federal habeas action on April 21, 2010 (doc. 1).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[3]   The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.   Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."   Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.   Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

<u>Id.</u>, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).   In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."   <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).   The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."   <u>Neelley v.</u>

---

[3] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).   The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court

conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'"  Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, — U.S. —, 131 S. Ct. 770, 786–87 (Jan. 19, 2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  See Gill, supra at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. See Harrington, 131 S. Ct. at 786; see also Gill, supra, at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding."  Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence."  28 U.S.C. § 2254(e)(1); see e.g. Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s

"unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. *See* Gill, 2010 WL 609844, at *18. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. *Id.*

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.   EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[4] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in

---

[4]Section 2254 provides, in pertinent part:

(b)(1)   An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
          (A)  the applicant has exhausted the remedies available in the courts of the State; or
          (B) (i)  there is an absence of available State corrective process; or
              (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

each appropriate state court, alerting that court to the federal nature of the claim.  <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has provided lower court with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," <i>id.</i>, 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In <u>Anderson</u>, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  <u>Anderson</u>, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  <i>Id.</i>, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  <i>Id.</i>

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to

mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[5]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[6]

---

[5] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

[6] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing one other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement.  After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach.  For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003). The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* <u>Tower v. Phillips</u>, 7 F.3d 206, 210 (11th Cir. 1993); <u>Parker v.</u>

---

Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[7]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the

---

[7] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available procedures is not enough to establish cause.  Tower, 7 F.3d at 210.  To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him.  Schlup, 513 U.S. at 327.  Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id.

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS[8]

A.    Ground Three:  "Trial counsel was ineffective."

Petitioner contends his trial counsel was ineffective for failing to request a statement of particulars or depose State's witness Christopher Hendry to discover the exact dates of the allegedly illegal video downloads (doc. 5 at 5; doc. 6 at 16–18).  He states Mr. Hendry testified that the video at issue was downloaded on February 25, 2005, and July 11, 2005 (id.).  He asserts that at the last minute, defense counsel attempted to show that Petitioner had an alibi for February 25, 2005, by presenting testimony of Michael Ashman, Records Custodian of the Bay County Jail (id.).  Petitioner states Mr. Ashman testified that "Jason Cox" was booked into the Bay County Jail on January 4, 2005, and released on June 6, 2005 (id.).  However, on cross-examination, Mr. Ashman testified that the name of the person booked was Jason J. Cox, not Richard J. Cox (id.).

Petitioner contends if defense counsel had sought a statement of particulars or deposed Christopher Hendry, counsel would have had time to fully investigate an alibi (id.).  Counsel could

---

[8] The undersigned reordered Petitioner's claims for organizational purposes.

have contacted Attorney Rusty Shepard, who would have testified that his firm represented Petitioner during his incarceration at the Bay County Jail from February of 2005 to June 6, 2005 (*id.*). Petitioner states Mr. Shepard also would have testified that Petitioner was also known as Jason J. Cox (*id.*). Petitioner also asserts defense counsel could have contacted the office manager of Petitioner's employer, Schooner's Beach Club, who would have testified that on July 11, 2005, Petitioner worked from 7:55 a.m. to 1:45 p.m. and from 2:52 p.m. to 9:58 p.m. (*id.*). Petitioner states the State's evidence showed that the July 11 download occurred at 1:03 p.m. (*id.*). Petitioner contends if the jury heard this evidence, there is a reasonable probability he would have been acquitted, because the State could not have established he knowingly possessed the video in the face of evidence that he did not download it (*id.*).

Respondent concedes Petitioner raised this argument in his Rule 3.850 motion (doc. 13 at 12). Respondent contends Petitioner failed to show that the state court's adjudication of the claim was based upon an unreasonable determination of the facts, or contrary to or an unreasonable application of clearly established federal law (*id.* at 12–16).

1.    Clearly Established Federal Law

The standard for evaluating claims of ineffective assistance of counsel is set forth in Strickland v. Washington, 466 U.S. 668 (1984). To obtain relief under Strickland, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. *Id.* at 687–88. If Petitioner fails to make a showing as to either performance or prejudice, he is not entitled to relief. *Id.* at 697.

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's

actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15).  Furthermore, "[e]ven if many reasonable lawyers would not have done as defense counsel did at trial, no relief can be granted on ineffectiveness grounds unless it is shown that no reasonable lawyer, in the circumstances, would have done so."  Rogers v. Zant, 13 F.3d 384, 386 (11th Cir. 1994).  Counsel's performance is deficient only if it is "outside the wide range of professional competence."  Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").  "[T]here are no 'absolute rules' dictating what reasonable performance is . . . ."  Michael v. Crosby, 430 F.3d 1310, 1320 (11th Cir. 2005) (quoting Chandler, 218 F.3d at 1317).  Indeed, "'[a]bsolute rules would interfere with counsel's independence—which is also constitutionally protected—and would restrict the wide latitude counsel have in making tactical decisions.'"  Id. (quoting Putman v. Head, 268 F.3d 1223, 1244 (11th Cir. 2001)).

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high.  See Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002).  The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'"  Id. (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it "more likely than not, or prove by a preponderance of evidence," that counsel's errors affected the outcome.  Strickland, 466 U.S. at 693–94.  Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Id. at 694.  Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence.  Williams v. Taylor, 529 U.S. at 405–06.

The prejudice assessment does "not depend on the idiosyncracies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law.

Strickland, 466 U.S. at 694–95.  "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  *Id.* at 695.  Further, when the claimed error of counsel occurred at the guilt stage of trial (instead of on appeal), Strickland prejudice is gauged against the outcome of the trial, not on appeal.  *See* Purvis v. Crosby, 451 F.3d 734, 739 (11th Cir. 2006) (citing Strickland, 466 U.S. at 694–95).

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  Strickland, 466 U.S. at 698; Collier v. Turpin, 177 F.3d 1184, 1197 (11th Cir. 1999).  "The question of whether an attorney's actions were actually the product of a tactical or strategic decision is an issue of fact, and a state court's decision concerning that issue is presumptively correct."  Provenzano v. Singletary, 148 F.3d 1327, 1330 (11th Cir. 1998).  However, "the question of whether the strategic or tactical decision is reasonable enough to fall within the wide range of professional competence is an issue of law not one of fact."  *Id.*  When considering the legal question of the reasonableness of counsel's decision, the court is mindful that the Supreme Court has described strategic decisions of counsel as "virtually unchallengeable."  Strickland, 466 U.S. at 690.

2.       Federal Review of State Court Decision

Petitioner raised this claim as his sole ground for relief in his Rule 3.850 motion (Ex. N at 3–5).  The state circuit court held an evidentiary hearing at which Petitioner and his trial counsel, Mr. Fritz Mann, testified (Ex. O).  Following the taking of evidence, the court orally denied the motion, stating:

> Obviously, it was a strategic decision made by counsel and Mr. Cox to take advantage of the opportunity to try the case with an expert who apparently would not be rebutted, an expert who would testify that the images . . . on the downloaded videos were such that he was incapable of ascertaining the age of the image and therefore unable to say that the image was a minor, which would very well be important to the defense of the case.  Mr. Cox also, of course, indicated that it was his desire to move the matter forward to . . . avoid the necessity of languishing in the Bay County Jail indefinitely, which I've heard people use that as a reason in the past.  It's not the nicest place in the world to have to be incarcerated.  At least it wasn't then at the main . . . jail.  So I don't think Mr. Mann departed from the standard of

> care and consequently having made that strategic decision, [t]he Motion . . . for Post
> Conviction Relief is denied.

(Ex. O at 103–04).  The court subsequently issued a written decision stating:

> . . . the Court hereby finds that defense counsel Fritz Mann was not objectively
> unreasonable in his representation of defendant, and was not, therefore, ineffective,
> as the decision to pursue the speed trial strategy was a reasonable one under the
> circumstances of the case and was a decision reached by both counsel Fritz Mann
> and the defendant.

(Ex. N at 64).

Petitioner appealed the circuit court's decision to the First DCA (Ex. P).  The First DCA affirmed without a written decision (Ex. R).

Initially, the "contrary to" prong of the AEDPA standard is not implicated in this case.  A state court decision is "contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States" where the state court (1) "arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to [the Supreme Court]."  Williams, 529 U.S. at 405–06.  In this case, both Petitioner and the State cited the Strickland standard as the controlling legal standard in their briefs to the First DCA (see Ex. P at 9, Ex. Q at 5).  Further, Petitioner failed to demonstrate that the First DCA applied a different legal rule or ruled differently than the Supreme Court on a "materially indistinguishable" set of facts.  Therefore, the undersigned will proceed to consider Petitioner's claim under the AEDPA's "unreasonable determination of the facts" and "unreasonable application of clearly established Federal law" law standards.

Petitioner has not proffered any evidence to rebut the state court's factual finding that Mr. Mann made a tactical decision to forgo attempts to discover the exact date of the downloads and instead pursue a speedy trial.[9]  Mr. Mann testified that at the time he represented Petitioner in Case

---

[9] The rule regarding a statement of particulars provides, in relevant part:

> The court, on motion, shall order the prosecuting attorney to furnish a statement of particulars
> when the indictment or information on which the defendant is to be tried fails to inform the defendant
> of the particulars of the offense sufficiently to enable the defendant to prepare a defense.  The
> statement of particulars shall specify as definitely as possible the place, date, and all other material

No. 2006-CF-1920 ("the video case"), he was also representing him in a case where Petitioner was charged with soliciting a minor for sex ("the solicitation case") (Ex. O at 86).  Mann testified the solicitation case went to trial in November of 2006, and Petitioner was acquitted (*id.*)  He testified the same week, the judge scheduled trial on the video case (*id.*).  Mr. Mann then explained:

> Q [by the State]:  Any why were you in such a hurry to get those cases tried?
>
> A.  Well, we had, a couple of things had happened, the judge had indicated that he was setting both cases for the same week.  I had spoken to my client basically in September and then in early October about whether or not it would be appropriate to file a speedy trial demand.  Our theory was that the [video] case was the weaker of the two cases.  The prosecutor . . . was pretty clear she was gonna take the solicitation case first, and, anyway, she could, and we were trying to get the [video] case in front of the court because we felt that on our motion practice that the case was dismissable [sic] as a matter of law. . . .
>
> Q.  And so did you, in fact, request a speedy trial?
>
> A.  Yes, we did.  We filed a speedy trial demand on October the 9th and the following day, on October 10th, the judge denied our Motions to dismiss and then we were set to go to trial in November.
>
> . . . .
>
> Q.  Is that why you didn't file a Motion for a Bill of Particulars?
>
> A.  Well, a couple of things had happened.  The cutoff on discovery was originally in July of '06, and we got the first notice of the technical expert, Mr. Hendry, that they were gonna call to talk about the defendant's computer, on September 22nd.  And so the issue came up on or about September 22nd, whether or not we should do any additional discovery or file a Motion for Bill of Particulars.  We had not yet deposed Mr. Hendry, and I spoke to my client about that in the back here, in the lockup, and . . . he had sort of a dilemma . . . if he wanted to go to trial quickly on the [video] case, my interpretation of this court's prior rulings was that he was not gonna be able to file a Motion for Bill of Particulars, which would've necessitated a hearing, or to take any additional discovery depositions.  The, Judge Overstreet's policy, as I understood it, was that if you say you're filing a speedy trial demand, you're ready to go right now to trial.
>
> . . . .

---

facts of the crime charged that are specifically requested and are known to the prosecuting attorney, . . .
Fla. R. Crim. P. 3.140(n).

. . . I told him [Petitioner] . . . that he could either take Hendry's depo and do the Bill of Particulars or we could go to trial.

    Q.  Okay.  So that was your strategic decision, then, to go to . . . trial immediately?

    A.  That's correct.

. . . .

    And we were trying to get the [video] case to go first.  The other problem that we had was we had a witness who had become known to us through the State, Dr. Moore, who was a medical doctor in Tallahassee, he had routinely over his career been the physician for the [Child Protection Team] in Tallahassee on these types of cases, and he had come to the opinion that he could not state to a reasonable degree of medical certainty that the teenager depicted in the film was in fact a minor under the age of 18, and he was going to retire permanently in January.  And my concern was we had him under subpoena, if we had to re-subpoena him and he left the state or moved to the Virgin Islands or something like that, that we would lose, we would lose a critical witness for the Defense.

    Q.  And did Mr. Cox tell you that, and tell Jeremy Mathis, the investigator, that he had found inappropriate stuff on his computer but that he had deleted it?

    A.  Yes.  When he was arrested in March of 2006, he told Mathis, and this was a point of contention, that he had downloaded a lot of porn, but he didn't say child porn, and allegedly that he had found some, quote, "inappropriate stuff", closed quote, which he had deleted.

(Ex. O at 86–89).

Mr. Mann additionally testified that on June 29, 2006 (less than one month after Petitioner's arrest), Petitioner advised him that he would plead guilty to the charge in the video case in exchange for a sentence of five (5) years of probation and dismissal of the solicitation case (Ex. O at 89).  Mr. Mann testified that on September 6, he notified the prosecutor that Petitioner had changed his mind and would not enter a guilty plea (*id.* at 89–90).  Mann testified:

    [W]e had the discussion about the Bill of Particulars issue . . . between September 22nd and October the 9th, so sometime during that period is when I had talked to him standing up in the back.  We had talked about the Bill of Particulars thing, and I explained to him, I said you will not be able to have it both ways.  You won't be able to have the speedy trial motion filed and pending and yet have to have a hearing on a Motion for Bill of Particulars.

> And the other thing I told him was that the problem with criminal practice in state court is that the State is allowed to amend the Information virtually at the last minute anyway to conform to whatever their evidence is, literally, after jury selection.
>
> So he understood all that and that's when we had the discussion about it, and, you know, his decision was, no, let's go for it because we had the doctor under subpoena, the doctor was favorable to our view that the [video] was not capable of proof that the actor in it was under age, and we were just gonna forget about taking Mr. Hendry's depo as part of the . . . plan to just go for it and try the case.

(Ex. O at 91–92).  Mann testified he and Petitioner discussed the benefits of filing a speedy trial demand, specifically, (1) their expert, Dr. Moore, was available, but may become unavailable if they did not go to trial quickly, (2) they did not want to give the State an opportunity to obtain an expert, and (3) they believed Dr. Moore's testimony would win the case for them, and "we wanted to go forward as quickly as possible while we had that" (*id.* at 95).

Mr. Mann testified that when Charles Hendry testified during trial that one of the downloads was in February of 2005, and the other in June of 2005, Petitioner told Mann he was in jail in February of 2005 (Ex. O at 92–93).  Mann testified he immediately subpoenaed the custodian of records at the jail, and the custodian testified at trial that Jason Cox was in jail on the February date, but the records did not show he was in custody on the July date (*id.* at 93).  Mr. Mann further testified Petitioner did not tell him about work records from Schooners until after the trial (*id.* at 93–95).  Mann testified that upon Petitioner's telling him about Schooners, he obtained records on November 20, 2006, but it was not until April and May of 2007 that Petitioner told him he had more records that provided an "airtight" alibi for the July 11, 2005 download (*id.* at 96).  Mann testified Petitioner told him he (Mann) did "everything and more . . . that he had asked me to do" (*id.* at 97).

Petitioner testified at the evidentiary hearing that he agreed with Mr. Mann's strategy of filing a demand for speedy trial (Ex. O at 100–02).  He testified that when Hendry testified to the two download dates, he (Petitioner) knew he was in jail on the February date, but "[t]he second date I was stuck in the mud because, there was nothing I could do about that date because I didn't know at the time that I was working at the Bay Point Billfish Tournament" (*id.* at 99).  As an exhibit to Petitioner's Rule 3.850 motion, he filed a letter dated February 10, 2007, from Marcia Wiles, Office Manager at Schooners (Ex. N at 29).  The letter enclosed Schooners's payroll records for July

11–17, 2005, which indicated Petitioner worked at Schooners on July 11, 2005, from 2:52 p.m. to 9:58 p.m. (*id.* at 30–31).  The letter also attached a handwritten sheet of hours worked off-premises at the Bay Point billfish Tournament, which indicated Petitioner worked at the tournament on July 11 from 7:55 a.m. to 1:45 p.m. (*id.*).

The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington, 131 S. Ct. at 786).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 131 S. Ct. at 786; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

In the instant case, the First DCA's decision could have been supported by the argument that Mr. Mann's strategic decision to forgo efforts to discover the exact dates of the downloads was reasonable in light of:  (1) Petitioner's expressed desire to plead guilty until September of 2006, (2) counsel's belief in the strength of his pre-trial motions to dismiss, filed July 14, 2006 and September 13, 2006 (*see* Ex. A at 101–04, 143–46), (3) the State's late disclosure of Mr. Hendry as a witness on September 22, 2006, and (4) counsel and Petitioner's agreement to pursue a strategy of demanding a speedy trial (because their expert, Dr. Moore, was available, but may become unavailable if they did not go to trial quickly; they did not want to give the State an opportunity to obtain an expert; and they believed Dr. Moore's testimony would win the case for them).  Although it is possible that fairminded jurists could disagree that this theory is inconsistent with Strickland, that possibility only demonstrates that the state court's adjudication of the claim was not unreasonable.

Petitioner failed to establish that the state court's adjudication of his ineffective assistance of counsel claim was based upon an unreasonable determination of the facts, or was contrary to or an unreasonable application of Strickland.  Therefore, he is not entitled to federal habeas relief.

B.    Ground One:  "The trial court erred in denying the motion to dismiss."

Petitioner contends the trial court erred in denying defense counsel's Rule 3.190(c)(4) motion to dismiss, because the State did not have sufficient evidence showing that the person in the offending material was under the age of eighteen (doc. 5 at 4; doc. 6 at 2–6).  He states he raised this claim on direct appeal of his conviction (doc. 5 at 4).

Respondent contends Petitioner failed to state a federal claim (doc. 13 at 3–7).  Respondent argues Petitioner has asserted only a violation of state law, which is not cognizable in federal habeas (*id.*).  Respondent additionally contends Petitioner failed to exhaust his claim (*id.* at 7–8). Respondent contends Petitioner raised the claim of trial court as Issue I in his initial brief on direct appeal; however, he confined his argument to state law and did not fairly present a federal claim (*id.*).  Respondent contends Petitioner may not return to state court to properly exhaust a federal claim, because a second direct appeal is unavailable (*id.*).  Therefore, the claim was procedurally defaulted in the state courts and is barred from federal review (*id.*).  Respondent alternatively argues Petitioner's claim is without merit (*id.* at 8).

In Petitioner's reply, he contends it is axiomatic that a conviction violates the Constitution if the defendant is not proven guilty of every element of the crime (doc. 18).  He further contends a case upon which the defense relied, Jalbert v. State, 906 So. 2d 337 (Fla. 5th DCA 2005), was decided on federal grounds (*id.*).

Respondent's procedural argument is supported by the record.  In Petitioner's brief on direct appeal, he argued the trial court erred in denying defense counsel's motion to dismiss, filed pursuant to Fla. R. Crim. P. 3.190(c)(4), on the ground that there were no material disputed facts, and the undisputed facts did not establish a prima facie case of guilt (Ex. J at 27–30).  Petitioner argued the undisputed facts alleged in the motion to dismiss (the identity of the person in the video was unknown to the State and Petitioner, the birth date of the person was unknown to the State and Petitioner, and the State intended to prove the age of the person by opinion testimony from an expert) established the absence of evidence on an essential element of the crime, that the alleged "child performer" was under the age of eighteen (*id.*).  Petitioner argued the State erroneously relied upon Jalbert v. State, 906 So. 2d 337 (Fla. 5th DCA 2005) in support of its argument that the age of the person in the video was a question of fact for the jury (*id.*).  He argued that nothing in the

rationale or holding of <u>Jalbert</u> stated that the age of the person in the video was a jury question; instead, <u>Jalbert</u> held that the question of whether the material at issue depicted "actual" children as opposed to "computer-generated virtual children" or children who resemble adults was a question of fact for the jury (*id.*).

Petitioner did not refer to the federal constitution in his state court brief, and none of the cases cited in his direct appeal discussed the United States Constitution.  Indeed, Petitioner did not cite any federal source of law or even label his claim "federal."  Further, although Petitioner cited <u>Jalbert</u>, which relied upon decisions of the Sixth, Eighth, and Ninth Circuits for it's holding that the question of whether photographs depict actual children is a question of fact, not law, and is appropriate for the trier of fact to determine, Petitioner expressly argued that <u>Jalbert</u> did not apply to his case, thereby steering the First DCA away from the only case which relied upon federal law. Therefore, the undersigned concludes Petitioner failed to fairly present a federal claim to the state courts.

Any further attempt at exhaustion in Florida courts would be futile, because Petitioner's claims would be procedurally barred under Florida law.  *See* <u>Rodriquez v. State</u>, 919 So. 2d 1252, 1262 n.7 (Fla. 2005) (holding that issues were procedurally barred because they should have been, but were not, raised on direct appeal); <u>Smith v. State</u>, 445 So. 2d 323, 325 (Fla. 1983) ("Issues which either were or could have been litigated at trial and upon direct appeal are not cognizable through collateral attack.").  Therefore, the claim is procedurally defaulted.

As previously discussed, to overcome a procedural default such that the federal habeas court may consider the merits of a claim, Petitioner must show cause for the default and prejudice resulting therefrom or that a "fundamental miscarriage of justice" will occur if the court does not review his claim.  <u>Tower</u>, 7 F.3d at 210; <u>Parker</u>, 876 F.2d 1470.  Petitioner does not allege cause for his failure to exhaust a federal claim in the state courts.  Additionally, he does not argue he is entitled to review through the "fundamental miscarriage of justice" gateway, and even if the court liberally construed his pleadings as alleging that the employment records from Schooners constituted newly discovered evidence of his actual innocence, he has failed to show that this evidence entitles him to review of his claim.  Petitioner does not allege the employment records were unavailable to the defense prior to trial.  The fact that the records were not actually discovered until after trial does

not render them unavailable prior to trial.  Further, based upon the discussion of Ground Three *supra*, Petitioner failed to show that defense counsel's failure to discover the exact dates of the downloads, which Petitioner alleges would then have led to discovery of the employment records, constituted ineffective assistance of counsel.  Moreover, the reliability of the employment records has not been established.  The payroll records were not admitted as evidence at the post-conviction evidentiary hearing (*see* Ex. O).  Further, the documents did not did not satisfy the business records exception to the rule against hearsay under Florida law; nor do they satisfy the similar exception under federal law (*see* Ex. N at 29–31).  *See* Fed. R. Evid. 803(6); Fla. Stat. § 90.803(6).  Therefore, Petitioner failed to make a colorable showing of actual innocence.  Based upon the foregoing, Petitioner failed to demonstrate he is entitled to federal review of his procedurally defaulted claim.

        C.      <u>Ground Two: "The trial court erred in denying the motion for judgment of acquittal."</u>

In Ground Two, Petitioner asserts the State failed to establish that the person in the video was under the age of eighteen (doc. 5 at 4; doc. 6 at 4–15).  He asserts the defense offered expert testimony that the person may not have been under the age of eighteen (*id.*).  Petitioner asserts the State's evidence of the person's age was purely circumstantial, and the State's case failed to exclude every reasonable hypothesis of innocence (*id.*).  Therefore, the trial court violated his federal due process rights by denying the motion for judgment of acquittal ("JOA") (*id.*).  Petitioner states he raised this claim on direct appeal (doc. 6 at 12).

Respondent asserts Petitioner failed to properly exhaust a federal claim in the state courts (doc. 13 at 9–10).  Respondent states Petitioner argued on direct appeal that the trial court erred by denying the motion for JOA; however, his arguments were based solely on state law (*id.*).  Therefore, the federal claim was not fairly presented (*id.*).  Respondent argues that an attempt by Petitioner to state court to exhaust the claim would be futile, because a second direct appeal is unavailable; therefore, the claim is procedurally defaulted and barred from federal review (*id.*).  Without waiving the exhaustion defense, Respondent argues Petitioner's claim is without merit (*id.* at 10–11).

In Petitioner's brief on direct appeal, he argued the trial court erred in denying his motion for JOA and allowing the case to go to the jury where the State failed to prove the required elements

of the charged offense of possession of a representation of sexual performance by a child (Ex. J at 31–33).  Petitioner argued it was undisputed that the age of the alleged child in the video was unknown and unknowable, and the State did not present testimony of an expert regarding age; therefore, there was no substantial competent evidence to prove that the alleged "child performer" was under the age of eighteen, which was a material element of the crime charged (*id.*).

Petitioner framed his claim of trial court error in terms of state law without making any reference to federal law, and in the body of his argument he made no specific reference to the United States Constitution or federal law, and he cited no federal cases.  He argued Florida law only. Nothing in Petitioner's brief put the state court on notice that it was being presented as a federal constitutional claim.  Therefore, the undersigned concludes Petitioner's claim of trial court error with respect to the denial of the motion for JOA was not fairly presented to the state court as a federal constitutional claim and is thus unexhausted.  *See, e.g.*, Ramos v. Sec'y, Dep't of Corr., 441 Fed. Appx. 689, (11th Cir. 2011) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner made only passing reference to federal constitutional right to due process in arguing that trial court improperly denied motion for judgment of acquittal because State failed to sufficiently prove premeditation element of murder); Pearson v. Sec'y,  Dep't of Corr., 273 Fed. Appx. 847, 850 (11th Cir. 2008) (petitioner's federal sufficiency of evidence claim was not exhausted where petitioner cited exclusively to Florida cases in state court and addressed Florida law in all of his substantive arguments, even though Florida courts assess sufficiency of evidence under standard identical to federal standard); Cook v. McNeil, 266 Fed. Appx. 843, 845–46 (11th Cir. 2008) (petitioner did not alert the state court to the alleged federal nature of his sufficiency of the evidence claim and therefore failed to exhaust his federal due process claim; even though petitioner moved for judgment of acquittal and although Florida courts assess the sufficiency of the evidence under the standard applied in Jackson v. Virginia, 443 U.S. 307, 99 S. Ct. 2781, 2798, 61 L. Ed. 2d 560 (1979), petitioner cited exclusively to the state cases and all of his substantive arguments addressed Florida law; "the tenor of [petitioner's] narrow arguments that challenged the characterization of his knife and the sequence of his actions under the Florida statute did not bring a federal claim about due process to the attention of the state appellate court.").  *But see* Mulinix v. Sec'y for Dep't of Corr, 254 Fed. Appx. 763 (11th Cir. 2007) (petitioner's federal sufficiency of

evidence claim was exhausted where petitioner presented identical argument to state and federal courts, and Florida courts' sufficiency of evidence standard was identical to federal standard).[10]

Now, any further attempt at exhaustion in Florida courts would be futile because Petitioner's claims would be procedurally barred under Florida law. *See* <u>Rodriquez</u>, 919 So. 2d at 1262 n.7; <u>Smith</u>, 445 So. 2d at 325. Moreover, Petitioner has made none of the requisite showings to excuse his default. He has not alleged cause for his default; nor has he demonstrated he is entitled to review of his claim through the "fundamental miscarriage of justice" exception to the procedural bar. Therefore, Ground Two is procedurally defaulted and will not be considered in this court.

V.     CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is **ORDERED**:

The clerk of court is directed to change the docket to reflect that Kenneth S. Tucker is substituted for Edwin G. Buss as Respondent.

And it is respectfully **RECOMMENDED**:

---

[10] The undersigned cites unpublished opinions of the Eleventh Circuit only as persuasive authority and recognizes that the opinions are not considered binding precedent. *See* 11th Cir. R. 36-2.

1.      That the amended petition for writ of habeas corpus (doc. 5) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 14<u>th</u> day of May 2012.


/s/ *Elizabeth M. Timothy*

**ELIZABETH M.  TIMOTHY**

**UNITED STATES MAGISTRATE JUDGE**


### <u>NOTICE TO THE PARTIES</u>

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* **28 U.S.C. § 636;** <u>United States v. Roberts</u>**, 858 F.2d 698, 701 (11th Cir. 1988).**